IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

NORRIS G. LINGLE; BILLY JOE AND SHEILA
MCDANIEL; WILSON LAVELL AND EVELYN MATTHEWS;
WILLIAM D. AND BETTY MARIE GREEN; HARVEY
ADDISON; DANIEL GIFFORD ALLISON; GRANT
BENTLEY; CORY BOND; SAMUEL BOWENS; TROY
BROWN; LEWIS BURRELL; THOMAS E. CARLTON;
CLIFTON CATES, JR.; CLARENCE CHECKLEY; ROBERT
CLARK; PAT COLEY; ANDREW COLLINS; TOMMY
COWART; HOWARD DEES; KENNETH DOBBS; JOSEPH
DOBSON, SR.; ROBERT C. DOBY; ALEX DUCK; LONNIE
EANOCHS; JOHN FARMER; SHAWN M. FERGUSON; ANTHONY
V. FLEMING; NAOMI AND FERROL B. FRAZIER; MAMIE
GRIFFIN; CHARLES N. GRIMER; FREDDIE GRUBBS; CURTIS E.
HACKETT, JR.; RAYFORD HALL; CALVIN AND ELIZABETH
HARRIS; WILLIE A, HAYMOND; JOHNNY NOLAN AND MARY
ALLINE HENDERSON, SR.; HUGH AND LETA M. HILL; RICKIE
HILL; MANNY HORRIDGE; ROBERT L. HOWELL; CHARLIE T.
HUDSON; ROBERT JAMES; VENDERSON JAMES; JAMES M.
JOHNSON; WILL D. AND EDITH M. JOHNSON, JR.; SAMUEL
KING, JR.; JAMES KIRKWOOD, SR.; HARRY LADNER; JOHN T.
AND BEATRICE ANN LAMEY; FREDRICK E. LANDRUM, SR.;
HERBERT LARKIN; GEORGE LATHAM; ALBERT LEE, JR.;
JAMES LEE, SR; JOE LEWIS; ALFRED LEWIS, JR.; SAMUEL T.
AND PEGGY LITTON, SR.; WILLIE LOTT; CLINTON AND JOYCE
MALONE, SR.; SHELBY MANER; WILLIAM MARCRUM;
TILLMAN MAY; EARL MCBEATH; WILLIAM E. AND KATHY D.
MCCAMMON, III; JIMMY D. MCDANIEL; OSSIE MCDOUGLE;
NICKEY DOYLE AND DIANNE LOIS MCKINNON; DONALD
MCLEOD; KENNETH MCLEOD; LEE MCWILLIAMS; ALLEN K.
AND BETTY ANN MIDDLETON; TROY BRADY MIDDLETON;
TOLL MILLER, JR.; CHARLES MOORE; IRIE J. MOORE; DONNIE
R. MULLINES; STANLEY MULLINS; MARVIN E. AND CLYDENE
MYER, JR.; P.A. AND DORIS NEUMAN; SAMUEL NICHOLS;
EDDIE NUNEZ; DENNIS O'NEAL; DAVID PAIGE; JEFF PARNELL;
JOHN PATRONAS; D.A. PATT; JASPER PERRY; DONALD PICKERING;
JESSIE L. AND GERALDINE PITTS, SR.; GEORGE K. RAMSDEN;
DAVID RICE; ALONZO AND IRIS H. RICHARDSON; DOUGLAS
ROBERTS; JAMES ROBERTS; JAMES RUNNELS; EARL SANDERSON;



3:03cv925LN

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JUL 2 1 2003
BY_____ DEPUTY



A TRUE COPY, I HEREBY CERTIFY.
J.T. NOBLIN, CLERK
BY:
DEPUTY CLERK

1

JAMES W. SCOTT; ERNEST G. AND SHIRLEY SEAMAN SR.;
JOE N. SELLERS SR.; ROBERT H. SHEFFIELD; VERNON W.
AN JUDY SIBLEY; ROBERT SIMMONS; BILLY SMITH;
CLARENCE SOLEY; SHELLIE SPENCER; WALTER C. AND
BERNADETTE SPENCER; EARL V. AND RUTH STAGNER;
DAVID STEELE; KINNIE TANKSLEY; JAMES TAYLOR;
NORRIS A. THERIOT; CHARLES F. TWINER; CLARA
WAGES; ROBERT R. AND MARGIE WAITE SR.; EDISON
AND VIVIAN ANN WALKER JR.; EDGAR WALLEY;
MELVIN R. WARNSLEY; PATE WARREN; TRAVIS WARREN;
ROBERT WASON; GEORGE G. AND JUDY WATKINS;
EDWARD WEDGEWORTH; JAMES T. AND SHIRLEY WESTRY SR.;
JAMES WHITE; GEORGE WILLIAMS; SHERROD WILLIAMS;
LEE H. WINDHAM; EVAN J. AND KELLY M. WOLFE;
WILLIAM WOOD; MELCHESTER WOODLAND; JOHNNY
YOUNG; WILLIAM L. AND MARSHA BATES; LONNIE RAY
BEAVERS; DORICE S. BRITT; DELIIOUS AND CALVIN BUSH;
KENNETH BUTLER; WILSON T. AND MARGARET DARBY;
MAJOR AND DOROTHY DAVID; SAMMIE E. AND VELMA J.
EARVIN; DAVID EPPS; ROSCOE AND HELEN FAIRLEY;
JERRY W. FRADDY; BROOKIN MARZETTE JR.; JAY R.
BROOKS; KEVIN JERARD CROCHET; CALVIN DOSS;
MICHAEL JOSEPH DUPREE; JOHNNY RUSHING; HOWARD
AND LINDA MIMS; DONALD D. BAILEY; EDWARD A.
AND KATHLEEN BARBOUR; CLEMENTINE BRIDGES;
ARTHUR BRUMFIELD JR.; JIMMY D. AND DANA L.
BRYANT SR.; JULIANNA BURKLEY JR.; LEON ALFORD
AND BETTY BYRD SR.; ROBERT L. CROSS; SAM S. AND
THELMA FULLER; JERRY GOUGH; BOBBY AND DIANE
LOFTON; JOHN McKEEN; GEORGE C. STAMPER JR.;
HORACE AND JEWEL STRICKLAND; JAMES L. THOMAS;
RODNEY AND CARMAN DANZY; GEORGE C. AND LINDA
SMITH; FRED AND DIANE CARTER; MATTIE WOODS;
JAMES D. AND NANCY DAVIS; JAMES M. AND VIRGINIA
ODOM; CHARLES PENDLETON; JEFFREY DON AND
BARBARA SPELLS; JAMES SPROUD; JOHN HARRIS;
LESLIE HILL; EARNEST AND EMILY THOMAS; BARRY
CRYER; BOID AND LESLIE DAIGLE; JIMMIE MAJOR
AND DORIS McPAYNE; STEVE AND KIMBERLY KOBER;
MICHAEL ODEMS; SAMUEL PEARSON; HARLOW AND
ELAINE POLLAR; MICHAEL RENDOM; HARRISON L.
RILEY; JOHN AND PATRICIA SMITH; RANDOLPH L.
AND EDNA SMITH; THOMAS AND PATRICIA STEEN SR.;
DAVID AND MARGARET WELLS; ROYAL AND BRENDA
WIGGINS; RUSSELL G. WILL; CHARLES E. AND BETTY
JEAN WILLS SR.; JAMES A. HARRIS JR.; ROOSEVELT

**2**

HENDRIX; ROGER HERRON; CURTIS HORNE; MIKE
HUTCHINSON; ROBERT IVY; DORIS JACKSON;
MONICA JACKSON; SHIRLEY L. JAMES; DOROTHY L.
JOHNSON; JOHN JOHNSON; JEFFRIE JENKINS; PATRICIA
A. AND JOHNNIE L. JOHNSON; LESLIA JONES; MATTHEW
JONES; OTIS JONES JR.; CALVIN KEYS; RANDY S. LAMBERT;
OLEN AND PAULINE LEGER; ORVILLE LEWIS; JAMES
LUCILLE; ERNEST D. AND ZETTA G. MACK; EARL MARBRA;
RAYMOND E. AND DEBORAH C. JACOBSON; MORRIS MAY;
VICTOR MAY; ETHEL AND JAMES L. McDONALD; FLOYD
McKEE; FREDDIE J. McKINNEY; CURTIS L. AND JESSIE
M. MEEKS; HOWARD MIMS; EARNESTINE MITCHELL;
CHARLENE MOBLEY; STEPHINE MOORE; WILLIAM
MOORE; ARTHUR MORGAN; HUGH AND SANDRA M.
MYLES III; JAMES ODOM; SHIRLEY PAGE; LOREN
PALMER; MARVIN N. PAYNE SR.; CHARLES A.
PENDLETON; EVAUGHN PETTY; CYNTHIA PHELPS;
WILLIAM PEOPLES; HARDY PETTIWAY; ARTHUR
PHELPS; EDGAR PLUMMER; JOHN B. PORTER; LILLIE J.
POSTON; JOE AND PENNY RANKIN; FREDDIE ROBINS;
BOBBY D. RUBY SR.; EUGENE RUSH; ROY SAUCER;
LUKE SIBLEY; ARNOLD SMITH; GEORGE C. SMITH; TILOUS
SMITH; JEFFREY D. SPELLS; JAMES SPROUSE; CASHUS D.
STARKS; ALEXANDER STEWART; WAVERLY SCOTT JR.;
DAISY STRICKLAND; DAN TAYLOR; L.V. TAYLOR; FLOSSIE
J. THIGPEN; JAMES D. THOMPSON; VESTER THOMPSON;
RACHEL TORRAIN; DAVID TOTEM; JOE C. TULLOS; LUCILLE
TURNER; ROGER TUTOR; JACOB B. VAIL; ALEX
VANASSDALE; OLIVIA J. WALKER; DERWOOD WALTON;
BOOKER T. WASHINGTON; DEMETRICE AND MICHAEL
WEBB; EMMA WEEKS; EARL WHEATLEY; CHRISTOPHER
WHITE; JIMMY WHITE; DALE WHITFIELD; DOROTHY
WILLIAMS; SAMUEL B. WILSON; JAMES V. WILSON SR.;
GRADY WINSTEAD; ROY WOODS; ALLEN YOUNG; FRANK
YOUNG; FRANZELLA YOUNG;

VS.                                        CIVIL ACTION NO. _____

LINCOLN ELECTRIC COMPANY; HOBART
BROTHERS COMPANY; ILLINOIS TOOL
WORKS, INC.; ESAB GROUP, INC.; SELECT ARC, INC.;
NATIONAL ELECTRICAL MANUFACTURERS
ASSOCIATION; THE FERROALLOYS ASSOCIATION;
BOC GROUP f/k/a AIRCO, INC; PRAXAIR, INC.;
TDY INDUSTRIES, INC.; VIACOM, INC.;
WESTINGHOUSE ELECTRIC CORPORATION;
CATERPILLAR, INC.; GENERAL ELECTRIC COMPANY;
UNION CARBIDE CORPORATION; UNION CARBIDE
CHEMICALS AND PLASTICS COMPANY, INC.;
EUTECTIC CORPORATION; A. O. SMITH CORPORATION;
SANDVIK, INC.; DELORO STELLITE COMPANY, INC.;
MILLER ELECTRIC MANUFACTURING CO., INC.;
J. W. HARRIS CO., INC.; INDUSTRIAL WELDING
SUPPLIES OF HATTIESBURG, INC. d/b/a NORDAN SMITH;
AIRGAS-GULF STATES, INC.; CAPWELD, INC.;
EILAND'S WELDERS SUPPLY, INC.; WELDING
ENGINEERING SUPPLY CO., INCORPORATED;
SOUTHERN EQUIPMENT SUPPLY COMPANY, INC.;
B & R INDUSTRIAL SUPPLY; COLUMBIA WELDING
SERVICE, INC. and JOHN DOE DEFENDANTS A-Z                    DEFENDANTS

## NOTICE OF REMOVAL

Defendants The Lincoln Electric Company; A.O. Smith Corporation; The ESAB Group, Inc.;

Eutectic Corporation; Hobart Brothers Company; Praxair, Inc.; Sandvik, Inc.; Union Carbide

Corporation and Union Carbide Corporation in its capacity as the successor in interest to Union

Carbide Plastics & Chemicals Company, Inc.; Viacom Inc., successor by merger to CBS

Corporation, f/k/a Westinghouse Electric Corporation; TDY Industries, Inc. (Teledyne McKay); The

BOC Group, Inc., formerly known as Airco, Inc.; and Airgas-Gulf-States, Inc. (collectively "the

removing defendants") remove this action from the Circuit Court of Smith County, Mississippi to

this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446, and in support would show the following:

4

1.    The removing defendants are included among the defendants in an action pending in the Circuit Court of Smith County, Mississippi entitled Norris G. Lingle, et al. versus Lincoln Electric Co., et al., which was filed on December 26, 2002, and which appears on the docket of that court as Civil Action No. 2002-499.

2.    The plaintiffs allege in the complaint that the defendants are all sellers of consumable welding products (such as welding rods) that contain manganese.  The plaintiffs allege that such manganese-containing welding consumables are defective and unreasonably dangerous because (a) during their normal use they emit fumes that also contain manganese, the exposure to which allegedly causes neurological injuries; and (b) the defendants failed to provide adequate warnings of these alleged dangers to users and other persons who might be exposed to such fumes.

3.    On information and belief, the plaintiffs are residents of Alabama, Arkansas, Illinois, Louisiana, Mississippi, and Texas.  The plaintiffs are therefore citizens of those states for diversity purposes under 28 U.S.C. § 1332.

4.    None of the defendants in this action is incorporated under the laws of, or has its principal place of business in, Arkansas, Louisiana, or Texas.  Accordingly, no defendant may be considered a non-diverse citizen of any of those states for diversity purposes under 28 U.S.C. § 1332.

5.    The only defendants that are incorporated under the laws of Mississippi or that have their principal places of business in Mississippi are B & R Industrial Supply; Capweld, Inc.; Columbia Welding Service, Inc.; Eiland's Welders Supply Inc; Industrial Welding Supplies of Hattiesburg, Inc.; and Southern Welding Supply, Inc.  The only defendants that are incorporated under the laws of Alabama or that have their principal places of business in Alabama are Welding Engineering Supply Co., Inc. and Airgas-Gulf States, Inc.  These distributors ("the non-diverse

distributors") are thus the only defendants that may be considered citizens of Mississippi or Alabama for diversity purposes under 28 U.S.C. § 1332.

6.     It is now established, through discovery responses recently received from the non-diverse distributors, that they have been fraudulently joined as defendants to defeat diversity jurisdiction. Specifically, the non-diverse distributors' discovery responses reveal that they had no knowledge or reason to know at any relevant time of the dangers associated with manganese-containing welding consumables as alleged by the plaintiffs. The plaintiffs thus have no possibility of recovery against the non-diverse distributors under Mississippi law, and the citizenship of those distributors therefore should be disregarded for diversity purposes.

7.     Additionally, the plaintiffs have been fraudulently and egregiously misjoined to defeat diversity jurisdiction. The various plaintiffs allege different injuries and symptoms resulting from exposure to fumes from different types of welding consumables manufactured by different manufacturers and sold by different distributors who may or may not be named as defendants in this action. The complaint contains no allegations linking any particular plaintiff to any particular distributor. The plaintiffs' alleged exposures occurred during different time periods, under different working conditions, using different types of equipment, at different places of employment, and in different geographical areas. The plaintiffs' claims thus do not arise out of the same transaction or occurrence or series of transactions or occurrences, and do not raise any common question of law or of fact. Moreover, even if the plaintiffs' claims against the non-diverse distributors were generally cognizable under Mississippi law, no plaintiff could possibly have a viable claim against any distributor who did not actually sell the consumables to which that plaintiff was allegedly exposed.

6

The plaintiffs therefore should be severed pursuant to Fed. R. Civ. P. 21 and should be considered separately in determining whether complete diversity exists between the parties.

8.    The complaint alleges that the plaintiffs have suffered personal injuries including severe neurological injuries, past and future pain and suffering, past and future medical treatment and medical expenses, past lost wages and future disability, past and future impairment of earning capacity, a diminution in quality and enjoyment of life, emotional distress, and loss of consortium. The complaint also asserts a claim for punitive damages. It is therefore facially apparent from the complaint that the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.    This action is therefore removable to this Court because complete diversity exists between the properly considered parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, as required for federal diversity jurisdiction under 28 U.S.C. § 1332.

10.    The plaintiffs' complaint did not reveal the existence of complete diversity on its face. Instead, the first papers received by the removing defendants from which the existence of complete diversity could be ascertained were the discovery responses received from the non-diverse distributors revealing that the plaintiffs had no possibility of recovery against them because they had no knowledge or reason to know at any relevant time of the supposed dangers associated with manganese-containing welding consumables as alleged by the plaintiffs. Those discovery responses were received no earlier than June 27, 2003. This Notice of Removal is filed within 30 days of the receipt of the discovery responses as required by 28 U.S.C. § 1446(b), and within one year of the commencement of this action as required by § 1446(b).

11.    The removing defendants hereby give notice to the plaintiffs of the removal of this action pursuant to 28 U.S.C. § 1446(d). The removing defendants simultaneously are filing a true

and correct copy of this Notice of Removal with the clerk of the Circuit Court of Smith County, Mississippi pursuant to 28 U.S.C. § 1446(d).

12.    Attached as Exhibit A is a copy of all process, pleadings, and orders served on the removing defendants as required by 28 U.S.C. § 1446(a).

**ACCORDINGLY,** the removing defendants remove this action and give notice that the Circuit Court of Smith County, Mississippi shall proceed no further pursuant to 28 U.S.C. § 1446(d).

Respectfully submitted,

THE LINCOLN ELECTRIC COMPANY; A.O. SMITH CORPORATION; THE ESAB GROUP, INC.; EUTECTIC CORPORATION; HOBART BROTHERS COMPANY; PRAXAIR, INC.; SANDVIK, INC.; UNION CARBIDE CORPORATION AND UNION CARBIDE CORPORATION IN ITS CAPACITY AS THE SUCCESSOR IN INTEREST TO UNION CARBIDE PLASTICS & CHEMICALS COMPANY, INC.; AND VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION

By: _Michael W. Ulmer_
　　　Michael W. Ulmer
　　　Lewis W. Bell

OF COUNSEL:

Michael W. Ulmer (MSB No. 5760)
Lewis W. Bell (MSB No. 2337)
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300
Post Office Box 650
Jackson, Mississippi 39205

8

Walker W. Jones, III
BAKER DONELSON BEARMAN & CALDWELL
Meadowbrook Office Park
4268 I-55 North
Post Office Box 14167
Jackson, Mississippi 39236

James E. Upshaw
UPSHAW WILLIAMS BIGGERS BECKHAM & RIDDICK
309 Fulton Street
Post Office Drawer 8230
Greenwood, Mississippi 38935-8230

Mark C. Carroll
UPSHAW WILLIAMS BIGGERS BECKHAM & RIDDICK
Post Office Box 9147
Jackson, Mississippi 39286-9147

TDY INDUSTRIES, INC. (TELEDYNE MCKAY)

BY: _____
        Richard L. Forman

OF COUNSEL:

Richard L. Forman, MSB No. 5427
Tim Gray, MSB No. 10192
FORMAN PERRY WATKINS KRUTZ
    & TARDY, PLLC
1200 One Jackson Place
188 E. Capitol Street
Jackson, Mississippi 39201

THE BOC GROUP, INC., FORMERLY
KNOWN AS AIRCO, INC.

BY: _____
        R. David Kaufman
        M. Patrick McDowell

9

OF COUNSEL:

R. David Kaufman, MSB No. 3526
M. Patrick McDowell, MSB No. 9746
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
Post Office Drawer 119
Jackson, Mississippi 39205

AIRGAS-GULF STATES, INC.

BY: _Richard Cirilli_____
     Charles L. McBride, Jr.
     R. Richard Cirilli, Jr.

OF COUNSEL:

Charles L. McBride, Jr., MSB No. 8995
R. Richard Cirilli, Jr., MSB No. 99132
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
Post Office Drawer 119
Jackson, Mississippi 39205

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on

this date by United States mail, postage prepaid, upon the following:

## ATTORNEYS FOR PLAINTIFFS:

James Grenfell
Grenfell, Sledge & Stephens
Post Office Box 16570
Jackson, Mississippi 39236-6570

10

CONFLICT CHECK (291)
NEW MATTER REQUEST
NEW BUSINESS REPORT

## IN THE CIRCUIT COURT OF SMITH COUNTY, MISSISSIPPI

NORRIS G. LINGLE; BILLY JOE AND SHEILA
McDANIEL; WILSON LAVELL AND EVELYN
MATTHEWS; WILLIAM D. AND BETTY MARIE GREEN;
HARVEY ADDISON; DANIEL GIFFORD ALLISON;
GRANT BENTLEY; CORY BOND; SAMUEL BOWENS;
TROY BROWN; LEWIS BURRELL; THOMAS E.
CARLTON; CLIFTON CATES, JR.; CLARENCE
CHECKLEY; ROBERT CLARK; PAT COLEY;
ANDREW COLLINS; TOMMY COWART;
HOWARD DEES; KENNETH DOBBS; JOSEPH
DOBSON, SR.; ROBERT C. DOBY; ALEX DUCK;
LONNIE EANOCHS; JOHN FARMER; SHAWN M.
FERGUSON; ANTHONY V. FLEMING; NAOMI AND
FERROL B. FRAZIER; MAMIE GRIFFIN; CHARLES N.
GRIMER; FREDDIE GRUBBS; CURTIS E. HACKETT, JR.;
RAYFORD HALL; CALVIN AND ELIZABETH HARRIS;
WILLIE A. HAYMOND; JOHNNY NOLAN AND MARY
ALLINE HENDERSON SR.; HUGH AND LETA M. HILL;
RICKIE HILL; MANNY HORRIDGE; ROBERT L.
HOWELL; CHARLIE T. HUDSON; ROBERT JAMES;
VENDERSON JAMES; JAMES M. JOHNSON; WILLIE D.
AND EDITH M. JOHNSON JR.; SAMUEL KING JR.;
JAMES W. KIRKWOOD SR.; HARRY LADNER; JOHN T.
AND BEATRICE ANN LAMEY; FREDRICK E.
LANDRUM SR.; HERBERT LARKIN; GEORGE LATHAM;
ALBERT LEE JR.; JAMES LEE SR.; JOE LEWIS;
ALFRED LEWIS JR.; SAMUEL T. AND PEGGY LITTON SR.;
WILLIE LOTT; CLINTON AND JOYCE MALONE SR.;
SHELBY MANER; WILLIAM MARCRUM; TILLMAN MAY;
EARL McBEATH; WILLIAM E. AND KATHY D.
McCAMMON III; JIMMY D. McDANIEL; OSSIE McDOUGLE;
NICKEY DOYLE AND DIANNE LOIS McKINNON;
DONALD McLEOD; KENNETH McLEOD; LEE McWILLIAMS;
ALLEN K. AND BETTY ANN MIDDLETON; TROY BRADY
MIDDLETON; TOLL MILLER JR.; CHARLES MOORE;
IRIE J. MOORE; DONNIE R. MULLINES; STANLEY MULLINS;
MARVIN E. AND CLYDENE MYER JR.; P.A. AND DORIS
NEUMAN; SAMUEL NICHOLS; EDDIE NUNEZ; DENNIS
O'NEAL; DAVID PAIGE; JEFF PARNELL; JOHN PATRONAS;
D.A. PATT; JASPER PERRY; DONALD PICKERING; JESSIE L.
AND GERALDINE PITTS SR.; HERMON POLK; GEORGE
POLK SR.; ELVIN POOLE; BILLY PRINCE; KERNEY A. AND
GENEVA PUGH SR.; GEORGE K. RAMSDEN; DAVID RICE;
ALONZO AND IRIS H. RICHARDSON; DOUGLAS ROBERTS;
JAMES ROBERTS; JAMES RUNNELS; EARL SANDERSON;

**FILED**

DEC 2 6 2002

SMITH COUNTY CIRCUIT COURT

JAMES W. SCOTT; ERNEST G. AND SHIRLEY SEAMAN SR.;
JOE N. SELLERS SR.; ROBERT H. SHEFFIELD; VERNON W.
AN JUDY SIBLEY; ROBERT SIMMONS; BILLY SMITH;
CLARENCE SOLEY; SHELLIE SPENCER; WALTER C. AND
BERNADETTE SPENCER; EARL V. AND RUTH STAGNER;
DAVID STEELE; KINNIE TANKSLEY; JAMES TAYLOR;
NORRIS A. THERIOT; CHARLES F. TWINER; CLARA
WAGES; ROBERT R. AND MARGIE WAITE SR.; EDISON
AND VIVIAN ANN WALKER JR.; EDGAR WALLEY;
MELVIN R. WARNSLEY; PATE WARREN; TRAVIS WARREN;
ROBERT WASON; GEORGE G. AND JUDY WATKINS;
EDWARD WEDGEWORTH; JAMES T. AND SHIRLEY WESTRY SR.;
JAMES WHITE; GEORGE WILLIAMS; SHERROD WILLIAMS;
LEE H. WINDHAM; EVAN J. AND KELLY M. WOLFE;
WILLIAM WOOD; MELCHESTER WOODLAND; JOHNNY
YOUNG; WILLIAM L. AND MARSHA BATES; LONNIE RAY
BEAVERS; DORICE S. BRITT; DELIIOUS AND CALVIN BUSH;
KENNETH BUTLER; WILSON T. AND MARGARET DARBY;
MAJOR AND DOROTHY DAVID; SAMMIE E. AND VELMA J.
EARVIN; DAVID EPPS; ROSCOE AND HELEN FAIRLEY;
JERRY W. FRADDY; BROOKIN MARZETTE JR.; JAY R.
BROOKS; KEVIN JERARD CROCHET; CALVIN DOSS;
MICHAEL JOSEPH DUPREE; JOHNNY RUSHING; HOWARD
AND LINDA MIMS; DONALD D. BAILEY; EDWARD A.
AND KATHLEEN BARBOUR; CLEMENTINE BRIDGES;
ARTHUR BRUMFIELD JR.; JIMMY D. AND DANA L.
BRYANT SR.; JULIANNA BURKLEY JR.; LEON ALFORD
AND BETTY BYRD SR.; ROBERT L. CROSS; SAM S. AND
THELMA FULLER; JERRY GOUGH; BOBBY AND DIANE
LOFTON; JOHN McKEEN; GEORGE C. STAMPER JR.;
HORACE AND JEWEL STRICKLAND; JAMES L. THOMAS;
RODNEY AND CARMAN DANZY; GEORGE C. AND LINDA
SMITH; FRED AND DIANE CARTER; MATTIE WOODS;
JAMES D. AND NANCY DAVIS; JAMES M. AND VIRGINIA
ODOM; CHARLES PENDLETON; JEFFREY DON AND
BARBARA SPELLS; JAMES SPROUD; JOHN HARRIS;
LESLIE HILL; EARNEST AND EMILY THOMAS; BARRY
CRYER; BOID AND LESLIE DAIGLE; JIMMIE MAJOR
AND DORIS McPAYNE; STEVE AND KIMBERLY KOBER;
MICHAEL ODEMS; SAMUEL PEARSON; HARLOW AND
ELAINE POLLAR; MICHAEL RENDOM; HARRISON L.
RILEY; JOHN AND PATRICIA SMITH; RANDOLPH L.
AND EDNA SMITH; THOMAS AND PATRICIA STEEN SR.;
DAVID AND MARGARET WELLS; ROYAL AND BRENDA
WIGGINS; RUSSELL G. WILL; CHARLES E. AND BETTY
JEAN WILLS SR.; JAMES A. HARRIS JR.; ROOSEVELT

2

HENDRIX; ROGER HERRON; CURTIS HORNE; MIKE
HUTCHINSON; ROBERT IVY; DORIS JACKSON;
MONICA JACKSON; SHIRLEY L. JAMES; DOROTHY L.
JOHNSON; JOHN JOHNSON; JEFFRIE JENKINS; PATRICIA
A. AND JOHNNIE L. JOHNSON; LESLIA JONES; MATTHEW
JONES; OTIS JONES JR.; CALVIN KEYS; RANDY S. LAMBERT;
OLEN AND PAULINE LEGER; ORVILLE LEWIS; JAMES
LUCILLE; ERNEST D. AND ZETTA G. MACK; EARL MARBRA;
RAYMOND E. AND DEBORAH C. JACOBSON; MORRIS MAY;
VICTOR MAY; ETHEL AND JAMES L. McDONALD; FLOYD
McKEE; FREDDIE J. McKINNEY; CURTIS L. AND JESSIE
M. MEEKS; HOWARD MIMS; EARNESTINE MITCHELL;
CHARLENE MOBLEY; STEPHINE MOORE; WILLIAM
MOORE; ARTHUR MORGAN; HUGH AND SANDRA M.
MYLES III; JAMES ODOM; SHIRLEY PAGE; LOREN
PALMER; MARVIN N. PAYNE SR.; CHARLES A.
PENDLETON; EVAUGHN PETTY; CYNTHIA PHELPS;
WILLIAM PEOPLES; HARDY PETTIWAY; ARTHUR
PHELPS; EDGAR PLUMMER; JOHN B. PORTER; LILLIE J.
POSTON; JOE AND PENNY RANKIN; FREDDIE ROBINS;
BOBBY D. RUBY SR.; EUGENE RUSH; ROY SAUCER;
LUKE SIBLEY; ARNOLD SMITH; GEORGE C. SMITH; TILOUS
SMITH; JEFFREY D. SPELLS; JAMES SPROUSE; CASHUS D.
STARKS; ALEXANDER STEWART; WAVERLY SCOTT JR.;
DAISY STRICKLAND; DAN TAYLOR; L.V. TAYLOR; FLOSSIE
J. THIGPEN; JAMES D. THOMPSON; VESTER THOMPSON;
RACHEL TORRAIN; DAVID TOTEM; JOE C. TULLOS; LUCILLE
TURNER; ROGER TUTOR; JACOB B. VAIL; ALEX
VANASSDALE; OLIVIA J. WALKER; DERWOOD WALTON;
BOOKER T. WASHINGTON; DEMETRICE AND MICHAEL
WEBB; EMMA WEEKS; EARL WHEATLEY; CHRISTOPHER
WHITE; JIMMY WHITE; DALE WHITFIELD; DOROTHY
WILLIAMS; SAMUEL B. WILSON; JAMES V. WILSON SR.;
GRADY WINSTEAD; ROY WOODS; ALLEN YOUNG; FRANK
YOUNG; FRANZELLA YOUNG;

**VERSUS**

CIVIL ACTION NO. _2002-499_

LINCOLN ELECTRIC COMPANY; HOBART
BROTHERS COMPANY; ILLINOIS TOOL
WORKS, INC.; ESAB GROUP, INC.; SELECT
ARC, INC.; NATIONAL ELECTRICAL MANUFACTURERS
ASSOCIATION; THE FERROALLOYS ASSOCIATION;
BOC GROUP f/k/a AIRCO, INC; PRAXAIR, INC.;
TDY INDUSTRIES, INC.; VIACOM, INC.;
WESTINGHOUSE ELECTRIC CORPORATION;

3

CATERPILLAR, INC.; GENERAL ELECTRIC COMPANY;
UNION CARBIDE CORPORATION;
UNION CARBIDE CHEMICALS AND PLASTICS
COMPANY, INC.; EUTECTIC CORPORATION;
A. O. SMITH CORPORATION; SANDVIK, INC.;
DELORO STELLITE COMPANY, INC.;
MILLER ELECTRIC MANUFACTURING CO., INC.;
J. W. HARRIS CO., INC.; INDUSTRIAL WELDING
SUPPLIES OF HATTIESBURG, INC. D/B/A/ NORDAN SMITH;
AIRGAS-GULF STATES, INC.; CAPWELD, INC.;
EILAND'S WELDERS SUPPLY, INC.; WELDING
ENGINEERING SUPPLY CO., INCORPORATED;
SOUTHERN EQUIPMENT SUPPLY COMPANY, INC.;
B & R INDUSTRIAL SUPPLY; COLUMBIA WELDING
SERVICE, INC. and JOHN DOE DEFENDANTS A-Z

**FILED**

DEC 2 8 2002

SMITH COUNTY CIRCUIT COURT

DEFENDANTS

## COMPLAINT

The Plaintiffs allege:

1.    Venue is proper pursuant to Mississippi Rule of Civil Procedure 20(a) and *Miss. Code Ann. § 11-11-11* as Plaintiffs, Norris G. Lingle; Billy Joe and Sheila McDaniel; Wilson Lavell and Evelyn Matthews; and William D. and Betty Marie Green, are adult resident citizens of Smith County, Mississippi.

2.    The Defendants are:

a.    Lincoln Electric Company ("Lincoln"), a corporation incorporated under the laws of Ohio that has done and is doing business in Mississippi but is not qualified to do business in Mississippi, with H. Jay Elliott, 22801 St. Clair Ave., Cleveland, Ohio 44117, as its agent for service of process;

b.    Hobart Brothers Company ("Hobart"), a corporation incorporated under the laws of Ohio that has done and is doing business in Mississippi but is not qualified to do business in Mississippi, with C.T. Corporation System, 1300 E. 9th St., Cleveland, Ohio 44114, as its agent for service of process;

4

c.  Illinois Tool Works, Inc. ("Illinois Tool Works"), a corporation incorporated under the laws of Delaware that is qualified to do business in Mississippi and doing business in Mississippi, with C.T. Corporation System, 631 Lakeland East Dr., Flowood, MS 39208, as its agent for service of process;

d.  The ESAB Group, Inc. ("ESAB"), a corporation incorporated under the laws of Ohio that has done and is doing business in Mississippi but is not qualified to do business in Mississippi, with The Corporation Trust Company, The Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801, as its agent for service of process;

e.  Select Arc, Inc. ("Select Arc"), a corporation incorporated under the laws of Ohio that has done and is doing business in Mississippi but is not qualified to do business in Mississippi, with Paul E. Zimmer, 2700 Ketting Tower, 40 N. Main St., Dayton, OH 45423, as its agent for service of process;

f.  The National Electric Manufacturers Association ("NEMA"), a trade organization comprised of manufacturers that has a section devoted to the manufacturer of welding products known as "NEMA Electric Welding Section" or "NEMA Arc Welding Section"; Clark Filcox, Counsel, or Malcolm O'Hagan, President, 1300 North 17th Street, Suite 1847, Rosslyn, Virginia 22209;

5

g. The Ferroalloys Association ("TFA"), an association and industry advocacy group that includes the producers of chromium, manganese, silicone, and vanadium ferroalloys that sponsored a manganese subcommittee that includes representative from welding manufacturers, the AWS, and the NEMA; c/o of Edward J. Kinghorn, Jr., President or John W. Hilbert, III, 900 2nd Street, N.E., Suite 201, Washington, D.C. 20002;

h. BOC Group, Inc. f/k/a Airco, Inc. ("Airco"), a corporation incorporated under the laws of Delaware that is qualified to do business in Mississippi and doing business in Mississippi, with C. T. Corporation System, 118 N. Congress St., Jackson, MS 39205, as its agent for service of process;

i. Praxair, Inc. ("Praxair"), a corporation incorporated under the laws of Delaware that is qualified to do business in Mississippi and doing business in Mississippi, with Prentice-Hall Corporation System, 506 S. President St., Jackson, MS 39502, as its agent for service of process;

j. TDY Industries, Inc. ("Teledyne"), formerly known as Teledyne Industries, Inc., a corporation incorporated under the laws of California that is qualified to do business in Mississippi and doing business in Mississippi, with C. T. Corporation System, 631 Lakeland East Dr., Flowood, MS 39208, as its agent for service of process;

6

k.   Viacom, Inc. ("Viacom"), a corporation incorporated under the laws of Delaware that is doing business in Mississippi with The Prentice-Hall Corporation Service Company, 80 State Street, Albany, NY 12207, as its agent for service of process;

l.   Westinghouse Electric Corporation ("Westinghouse"), a corporation incorporated under the laws of Pennsylvania that is qualified to do business in Mississippi and doing business in Mississippi, with C.T. Corporation System, 631 Lakeland E. Dr., Flowood, MS 39208, as its agent for service of process;

m.   Caterpillar, Inc. ("Caterpillar"), a corporation incorporated under the laws of Pennsylvania that is qualified to do business in Mississippi and doing business in Mississippi, with C.T. Corporation System, 631 Lakeland E. Dr., Flowood, MS 39208, as its agent for service of process;

n.   General Electric Company ("General Electric"), a corporation incorporated under the laws of New York that is qualified to do business in Mississippi and doing business in Mississippi, with C.T. Corporation System, 631 Lakeland E. Dr., Flowood, MS 39208, as its agent for service of process;

7

o.    Union Carbide Corporation ("Union Carbide"), a corporation incorporated under the laws of New York that is qualified to do business in Mississippi and doing business in Mississippi, with C.T. Corporation System, 631 Lakeland E. Dr., Flowood, MS 39208, as its agent for service of process;

p.    Union Carbide Chemicals and Plastics Company, Inc. ("Union Carbide Chemicals"), a corporation incorporated under the laws of New York that is qualified to do business in Mississippi and doing business in Mississippi, with C.T. Corporation System, 631 Lakeland E. Dr., Flowood, MS 39208, as its agent for service of process;

q.    Eutectic Corporation ("Eutectic"), a corporation organized under the laws of New York that has done and is doing business in Mississippi, but is not qualified to do business in Mississippi, with Thomas E. Heftler, Esquire 7 Hanover Square, New York, New York 10004, as its agent for service of process;

r.    A. O. Smith Corporation ("Smith"), a corporation incorporated under the laws of Delaware that is qualified to do business in Mississippi and doing business in Mississippi, with Prentice-Hall Corporation System, 506 S. President St., Jackson, MS 39502, as its agent for service of process;

8

s.     Sandvik, Inc. ("Sandvik"), a corporation incorporated under the laws of Delaware that has done and is doing business in Mississippi, but is not qualified to do business in Mississippi, with C. T. Corporation System, 818 W. 7th Street, Los Angeles, CA 90017, as its agent for service of process;

t.     Deloro Stellite Company, Inc. ("Deloro"), a corporation incorporated under the laws of Delaware that has done and is doing business in Mississippi, but is not qualified to do business in Mississippi, with C. T. Corporation System, 818 W. 7th Street, Los Angeles, CA 90017, as its agent for service of process;

u.     Miller Electric Manufacturing Co., Inc. ("Miller Electric"), a corporation incorporated under the laws of Wisconsin that has done and is doing business in Mississippi, with CT Corporation System, 44 E. Mifflin St., Madison, WI 53703, as its agent for service of process;

v.     J. W. Harris Co., Inc. ("J. W. Harris"), a corporation incorporated under the laws of Ohio that has done and is doing business in Mississippi, with Stephen M. Nechemias, 425 Walnut St., No. 1800, Cincinnati, OH 45202, as its agent for service of process;

w.     Industrial Welding Supplies of Hattiesburg, Inc. d/b/a Nordan Smith ("Industrial Welding"), a corporation incorporated under the laws of

9

Mississippi doing business in Mississippi whose agent for service of process is Robert O. Tatum, 11 Parkway Blvd., Hattiesburg, MS 39401-8893;

x.     Airgas-Gulf States, Inc. ("Airgas"), a corporation incorporated under the laws of Delaware that is qualified to do business in Mississippi and doing business in Mississippi, with C. T. Corporation System, 631 Lakeland East Dr., Flowood, MS 39208, as its agent for service of process;

y.     Capweld, Inc. ("Capweld"), a corporation organized under the laws of Mississippi doing business in Mississippi with its principal place of business in the First Judicial District of Hinds County, Mississippi whose agent for service of process is J. Dean Dunaway, 233 E. Rankin, Jackson, MS 39201;

z.     Eiland's Welders Supply, Inc. ("Eiland's"), a corporation organized under the laws of Mississippi doing business in Mississippi with its principal place of business in the First Judicial District of Hinds County, Mississippi whose agent for service of process is Raymond J. Eiland, 490 Julienne St., Building E, Jackson, MS 39201;

aa.     Welding Engineering Supply Co., Incorporated ("Welding Engineering"), a corporation incorporated under the laws of Alabama that is qualified to do business in Mississippi and doing business in Mississippi, with C. T.

10

Corporation System, 631 Lakeland East Dr., Flowood, MS 39208, as its agent for service process;

bb.     Southern Equipment Supply Company, Inc. ("Southern Equipment"), a corporation organized under the laws of the State of Mississippi who's agent for service of process is Thomas Lucien Andries, 885 Roach Street, Jackson, Mississippi 39201;

cc.     B & R Industrial Supply ("B & R"), is a corporation incorporated under the law of the State of Mississippi, doing business in Mississippi, who's agent for service of process is Nathan D. Stringer, 2018 West 10th Street, Laurel, Mississippi 39441;

dd.     Columbia Welding Service, Inc., a corporation incorporated under the laws of the State of Mississippi doing business in Mississippi and who's agent for service of process is Nell K. Elkins, 167 Spell Drive, Columbia, Mississippi 39429; and

ee.     John Doe Defendants A-Z, whose identities are unknown to the Plaintiffs at this time, but when those parties' true identities are discovered, the pleadings will be amended by substituting their true names and giving proper notice to these parties, pursuant to M.R.C.P. 9(h). These Defendants include sellers, suppliers, distributors, and manufacturers that, at any time relevant to these

11

proceedings, supplied welding equipment, supplies, and steel/metal products containing manganese to Ingalls Shipyard, Pascagoula, Mississippi, and also include unknown members of AWS, NEMA and TFA, whose negligence and breaches caused or contributed to cause the Plaintiffs' damages and injuries.

3.    The Defendants are corporations or unincorporated associations that are incorporated in Mississippi and in states other than Mississippi, that have committed a tort in whole or in part in Mississippi within the meaning of *Miss.Code.Ann. §13-3-57(2000 Supp.)*, or have entered into a contract performed in whole or in part in Mississippi. The Plaintiffs assert claims under the common law of Mississippi and under *Miss.Code.Ann. §11-1-63(2000 Supp.)*.

## FACTS

4.    For at least the past 20 years, the Plaintiffs, were exposed to toxic fumes resulting from welding while working in Mississippi.

5.    The ordinary and intended use of welding products causes emission of fumes that contain manganese ("welding fumes").

6.    Since 1837, manganese has been medically recognized as toxic to the human central nervous system in levels that exceed the trace amounts normally found in the human body. Toxicity of manganese causes progressive, disabling neurological damage known as manganese poisoning. People who suffer from manganese poisoning suffer from debilitating neurological problems that affect their ability to think, talk, eat, move, sleep, and work.

7.    Persons exposed to welding fumes absorb them into their body primarily through inhalation. Manganese exposure for a period as short as 49 days causes manganese poisoning and progressive, disabling, neurological damage.

12

8.     During the period stated above, the Plaintiffs were exposed to welding fumes while using welding products and equipment or working in the proximity of other persons using welding products or equipment.

9.     As a direct and proximate result of exposure to welding fumes, the Plaintiffs developed and have been diagnosed with manganese poisoning, also known as manganism.

10.    As a direct and proximate result of exposure to welding fumes, the Plaintiffs suffered permanent neurological and physical damage, severe physical and mental pain, loss of wages, loss of earning capacity, disability, medical expenses, and loss of enjoyment of life.

11.    At all relevant times, the Plaintiffs were unaware of the dangerous nature of welding fumes, manganese, and the neurological injuries that could occur because of exposure to welding fumes.

12.    Any reasonable persons, including the Plaintiffs if adequately informed of the hazards of exposure to welding fumes, would not have willingly exposed him or herself to welding fumes in workplaces without necessary precautionary measures.

13.    All of the Defendants are or were manufacturers, sellers, suppliers or large industrial consumers of welding products.

14.    Through industry and medical studies, unknown to the Plaintiffs, the Defendants knew or should have known of the health hazards inherent in the products they were selling, distributing, or using.  The Defendants ignored or deliberately and fraudulently concealed that information, or condoned the concealment, and/or conspired with, advised, encouraged, or aided others and/or each other to do so, in order to sell their products and/or avoid the costs of safety precautions, and/or avoid litigation by people injured by welding fumes.  The actions or inactions

13

constitute gross negligence and demonstrate a reckless disregard for the rights and safety of others, justifying punitive damages against the Defendants.

15.    The Defendants committed numerous tortious acts that included fraudulently and negligently misrepresenting, concealing, suppressing, and omitting material information about the health effects of welding fumes and precautionary measures as specifically alleged below.

16.    NEMA is a trade organization comprised of manufacturers that has a section devoted to the manufacturers of welding products known as "NEMA Electric Welding Section" or "NEMA Arc Welding Section" ("NEMA Welding Section").

17.    TFA is an industry advocacy group consisting of producers of chromium, manganese, silicon, and vanadium ferroalloys that sponsored a manganese subcommittee that includes representatives from welding manufacturers and the AWS and NEMA. The TFA's membership included management representatives of companies that produce welding products and large consumers that purchase the products for use in their operations.

18.    The Defendants created committees within these trade organizations and then used the committees to fraudulently and negligently misrepresent, conceal, suppress, and omit material information about the health effects of welding fumes and necessary precautionary measures.

19.    Specific examples of the trade association committees controlled by Defendants and their activities are identified below.

20.    The Defendants controlled and used the committees to conceal the dangers from people exposed to welding fumes by:

     a.    limiting individual membership on relevant committees exclusively or primarily to employees of the Defendants or their designated representatives;

     b.    maintaining, through Defendants' delegates, majority or exclusive voting control of the committees at all times;

14

    c.     selecting the assignments or proposals considered by each committee;

    d.     funding projects chosen by Defendants;

    e.     using the Defendants' delegates to prepare the written records of the business transacted by each committee;

    f.     reviewing and editing, to the satisfaction of the Defendants, studies performed by consultants hired by the committees.

21.    From at least 1937 to the present, the Defendants, by their actions and through trade association committees they controlled, undertook studies, issued product labels and other health and safety information, and issued specifications and standards for ventilation, safety equipment, and other precautionary measures.

22.    At all times, the Defendants acted with the intent to conceal the health hazards of welding fumes, and specifically manganese, knowing that their studies, publications, specifications, and standards would be adopted and relied upon by manufacturers, sellers, and large consumers of welding products as the authoritative source for warnings, instructions, and precautionary measures printed on product labels and otherwise distributed in the stream of commerce.

23.    The Defendants had actual knowledge about the causal relationship between manganese-containing welding fumes and neurological injury. The Defendants concealed this information from workers' exposed to welding fumes.

24.    The causal connection between neurological injuries and welding fumes containing manganese has been scientifically documented since 1932.

25.    In 1932, a medical article was published documenting two cases of welders with neurological injury caused by manganese poisoning from welding fumes. The copy of this article or a summary of the medical article was received in the libraries of many or all Defendants.

15

26.   : In 1937, NEMA's Welding Section received further notice of the contents of the 1932 medical article through a welding safety booklet published by an insurance company stating that manganese in welding fumes "causes a disease similar to *paralysis agitans* [Parkinson's disease]."

27.   : In 1944, NEMA's Welding Section received notice of a claim of manganese poisoning in a welder.

28.   : In 1958, the AWS sponsored Z49 Committee issued a technical document, (not intended for use by welders) approved by the AWS Technical Committee, an oversight committee for AWS activities, reflecting its knowledge that manganese in welding fumes is a potentially toxic substance.

29.   In 1966, at a meeting of a task group of the AWS Filler Metal Committee, members of the committee reviewed an industrial hygiene article identifying manganese as a toxic substance in welding fumes, and the Committee discussed neurological injuries in welders.

30.   : In 1970, the AWS Task Group on Welding Fumes received notice, through a literature search submitted by a consultant hired by the Task Group on Welding Fumes, that welding fumes could cause neurological damage due to manganese poisoning, and that the symptoms of manganese poisoning resemble the symptoms of Parkinson's Disease.

31.   : In 1970, the AWS Task Group on Welding Fumes received notice, through a welding fume study conducted by a consultant hired by the Task Group on Welding Fumes, that welding fumes could easily exceed the recommended occupational exposure guidelines, even when ventilation standards specified by Defendants were followed.

32.   : Beginning in the late 1970s, the AWS Safety and Health Committee received notice of claims of welders suffering neurological injuries from manganese in welding fumes.

16

33.     In 1978, the AWS Safety and Health Committee received notice, through a literature search report submitted by a consultant hired by the Committee, that welders can suffer neurological damage from manganese in welding fumes.  A portion of this report is quoted below:

> "Although a number of cases...have been reported, there are no recent studies reported in the literature which explore the magnitude of the problem of chronic manganese poisoning in welders.  In future epidemiological studies of various welding populations, the prevalence of this disease should be investigated.
>
> ...
>
> Early symptoms of chronic manganism include restlessness, irritability and a tendency to laugh or cry without purpose.  These symptoms may be followed by apathy, visual hallucinations, uncontrollable impulse, flight of ideas, mental confusion or euphoria.
>
> Mask-like facial expression, spastic grin, muscle rigidity, slow gait with sliding of the feet, increased and abnormal reflexes, monotonous blurred speech with poor articulation, tremors, irregular handwriting, impaired hearing, double vision, abnormal reactions to pain, touch, heat and pressure, excessive salivation and perspiration, sexual impotence and diminution of libido have been described by various authors.... Mental activity is reported to be slowed, judgment impaired and memory weakened, but intelligence remains normal.
>
> ...
>
> The observation that manganism resembles Parkinson's Disease deserves emphasis.  Although no data on the prevalence of Parkinsonism in welders are available, there is a concern that some cases of manganese poisoning could be mistakenly diagnosed as Parkinson's Disease.  Further investigations may be warranted.
>
> Manganism, like Parkinsonism, responds favorably to treatment with the drug levodopa (L-dopa), indicating that the two diseases may share certain biological abnormalities: depletion of dopamine (a neurotransmitter in the basal ganglia of the brain) and depletion of melanin pigment content of the nerve cells of the substantia nigra, also in the brain."

34.     In 1978, the same consultant described above in paragraph 35 reported to the AWS Safety and Health Committee that manganese poisoning from welding fumes could be misdiagnosed as idiopathic Parkinson's Disease, and that the problem was so widespread that it required an epidemiological study.

35.     In 1979, the AWS Research Committee and the AWS Executive Committee on Safety and Health concluded that there was sufficient evidence to justify the funding of an epidemiological

17

study that would include the study of neurological problems in welders. The committee voted to undertake this epidemiological study, although it was never completed.

36.  In 1983, the AWS Safety and Health Committee received notice through an independent literature search that manganese poisoning is "readily confused with Parkinson's Disease," and also that in a study in India, 40% of the welders studied suffered "neurological injury."

37.  Beginning in the late 1970s and early 1980s, the Defendants through the AWS Safety and Health Committee and NEMA Welding Section sponsored "Industry Defense Committee," receiving notice of claims of manganese poisoning filed as lawsuits against companies in the welding industry.

38.  In 1984, the chairperson of the AWS Safety and Health Committee admitted that "manganese fumes can cause a disease quite similar to Parkinson's Disease after six months to two years of exposure." The Defendants were aware of this admission.

39.  Beginning in 1985 and continuing to the present, certain Defendants admitted in their Manufacturer Safety Data Sheets ("MSDS"), that are technical documents of limited distribution, their knowledge that manganese in welding fumes could cause neurological damage.

40.  Because not all Defendants attended each meeting, it was a regular practice of the trade association committees to publish written minutes that were disseminated to all committee members including those not in attendance, for the purpose of ratifying and adopting the actions taken and decisions made at the meetings.

41.  At a meeting of NEMA's Welding Section held on March 16, 1937, the Defendants in attendance agreed to and did intentionally, knowingly, and recklessly conceal known hazards associated with welding fumes by forming a "Dust and Smoke Committee" to preempt investigation of welding fume hazards by independent sources that were not controlled by the Defendants.

18

42.     During meetings of NEMA's Welding Section held between January 20 and June 23, 1938, the Defendants in attendance agreed to and did intentionally, knowingly, and recklessly conceal known hazards of welding fumes by changing the language of a publication issued by an insurance company to delete the original statement in the publication that manganese in welding fumes causes a disabling illness similar to Parkinson's Disease.

43.     In 1939-40, at meetings of NEMA's Welding Section, the Defendants in attendance agreed to and did intentionally, knowingly, and recklessly conceal the hazards of welding fumes by purporting to undertake an investigation of the health hazards of welding fumes and then, upon its completion, changing the conclusions of the study, so as to falsely represent that welding fumes were not harmful to welders.

44.     In 1949, as part of a scheme to create and disseminate false evidence useful in defending against claims brought by persons injured by exposure to welding fumes, Defendant members of NEMA's Arc Welding Section agreed to and did intentionally, knowingly, and recklessly conceal known hazards of welding fumes by providing information for and causing publication in a welding trade journal of a two-part article that made the misrepresentation that welding fumes were not toxic.

45.     In 1949 and 1951, at meetings of NEMA's Arc Welding Section which considered precautionary measures, the Defendants in attendance agreed to and did intentionally, knowingly, and recklessly conceal the health hazards of welding fumes by rejecting the adoption of any precautionary product labels for welding products because the Defendants feared that welders would be afraid to use welding products if they saw precautionary product labels, and therefore sales of welding products would be reduced.

19

46.   In 1952, the Defendants reorganized the AWS Safety Recommendations Committee and called a meeting to consider the furnishing of safety and health information at which they agreed to, and did intentionally, knowingly, and recklessly conceal the health hazards of welding fumes by rejecting the adoption of any precautionary product labels for welding products.

47.   In 1952, at a meeting of the AWS Safety Recommendations Committee, the Defendants in attendance agreed to, and did intentionally, knowingly, and recklessly adopt a policy of refuting existing reports of welding fume hazards by publishing their own reports that misrepresented exposure to welding fumes as safe.

48.   In 1957, the Defendants agreed to, and did intentionally, knowingly, and recklessly conceal the health hazards of welding fumes by sponsoring the publication of an article in the *Welding Engineer* trade publication that made the misrepresentation that "toxic gases are not produced by electrode coatings."

49.   In 1966, at meetings of the AWS A5 Filler Metal Committee and a task group, the Defendants in attendance intentionally, knowingly, and recklessly agreed to publication in a trade journal or an article misrepresenting the health hazards of welding fumes as causing only "temporary disability."

50.   In 1966, at meetings of the A5 Filler Metal Committee of the AWS and a Task Group of that committee, the Defendants in attendance agreed to, and did intentionally, knowingly, and recklessly conceal health hazards of welding fumes by establishing industry-wide specifications for precautionary product labels that failed to warn workers of the danger of manganese in welding fumes. This precautionary label stated:

> Welding may produce fumes and gases hazardous to health. Avoid breathing these fumes and gases. Use adequate ventilation. See USAS Z49.1 "Safety in Welding & Cutting," published by the American Welding Society.

20

51.  In 1966, at meetings of the A5 Filler Metal Committee of the AWS and a Task Group of that committee, the Defendants in attendance established industry-wide specifications for precautionary product labels which did intentionally, knowingly, and recklessly omit instructions about necessary ventilation, precautionary measures, and other information, needed to protect workers against the toxic effect of manganese.

52.  In 1966-67, through votes on a ballot distributed to the Defendants through the A5 Filler Metal Committee of the AWS, the Defendants did intentionally, knowingly, and recklessly approve, as part of the AWS required specifications for most welding products, a precautionary product label concealing health hazards from welding fumes and omitting instructions about necessary ventilation, precautionary measures, and other information.

53.  From 1975-79, the Defendants, through the AWS Committee on Safety and Health, did intentionally, knowingly, and recklessly conceal the known hazards of welding fumes by providing information that misrepresented the hazards associated with welding fumes as part of a deliberate scheme to prevent an independent standard-setting organization from lowering the occupational exposure guidelines for iron oxide and general welding fumes.

54.  In 1979, at meetings of a joint AWS-NEMA committee consisting of a special Task Group of the A5 Filler Metal Committee of the AWS and the Labeling and Safe Practices Committee of NEMA's Arc Welding Section, Defendants intentionally, knowingly, and recklessly established industry-wide specifications for precautionary product labels that concealed the health hazards of welding fumes by omitting any reference to the toxic effects of manganese in welding fumes.

55.  In 1979, at meetings of a joint AWS-NEMA committee consisting of a special Task Group of the A5 Filler Metal Committee of the AWS and the Labeling and Safe Practices Committee of NEMA, the Defendants did intentionally, knowingly, and recklessly establish industry

21

specifications for precautionary measures, and other information needed to protect workers against the toxic effects of manganese in welding fumes.

56.    In 1979, through votes on a ballot distributed to the Defendants through the AWS-NEMA Joint Committee On Precautionary Labels and the A5 Filler Metal Committee of the AWS, the Defendants did intentionally, knowingly, and recklessly approve as part of the required industry-wide specifications for most welding products a precautionary product label concealing health hazards and omitting instructions about necessary ventilation, precautionary measures, and other information. This precautionary label stated in pertinent part:

> "WARNING: Protect yourself and others. Read and understand this label.
> FUMES AND GASES can be dangerous to your health.
> Read and understand the manufacturer's instructions and your employer's safety practices.
> Keep your head out of the fumes.
> Use enough ventilation, exhaust at the arc, or both, to keep the fumes and gases from your breathing zone, and the general area.
> See American National Standard Z49.1 "Safety in Welding and Cutting" published by the American Welding Society."

57.    Beginning in 1979 and continuing until the present time, at meetings of the AWS Technical Council and Board of Directors, the Defendants in attendance did intentionally, knowingly, and recklessly conceal the health hazards of welding fumes by failing and refusing to perform an epidemiological study, recommended by other AWS committees and an independent consultant retained by the Defendants, to investigate the neurological effects of welding fumes on persons exposed to welding fumes.

58.    In 1980, at meetings of NEMA's Ad Hoc Committee on Precautionary Labeling, the Defendants in attendance did intentionally, knowingly, and recklessly conceal health hazards of welding fumes by approving industry specifications for precautionary product labels for welding power sources that omitted reference to the toxic effects of manganese in welding fumes on persons exposed to welding fumes.

22

59.    Beginning in 1980, at meetings of the NEMA Ad Hoc Committee on Precautionary Labeling, the Defendants in attendance did intentionally, knowingly, and recklessly approve industry specifications for precautionary product labels for welding power sources that omitted necessary instructions about ventilation, precautionary measures, and other information needed to protect against the toxic effects of manganese in welding fumes.

60.    Beginning in 1980 and continuing until 1996, at meetings of the NEMA MSDS Task Force Committee and the AWS SH-4 Ad Hoc Committee on Suggestions and Changes to NEMA Publication EW 5-1982, the Defendants in attendance did intentionally, knowingly, and recklessly agree to conceal health hazards of welding fumes by adopting a recommended format for the Hazardous Material and Health Hazard Data sections of the Material Safety Data Sheets (MSDS) for welding products that omitted reference to the manganese content of welding fumes, the neurological damage caused by manganese in welding fumes, and necessary instructions for protection against the health hazards of welding fumes.

61.    Beginning in 1993 and continuing to the present time, the Defendants, through the AWS Safety and Health Committee and NEMA Welding Section, did intentionally, knowingly, and recklessly seek to conceal the health hazards of manganese in welding fumes by appointing designated representatives to become committee members of, and providing funding for, a trade organization called The Ferroalloys Association ("TFA"), which opposes restrictions on the guidelines for manganese exposure levels established by various authorities.

62.    In 1993-95, the Defendants, through the above described organization sponsored by the AWS Safety and Health Committee and NEMA Welding Section, as part of a scheme to prevent the lowering of occupational exposure guidelines for manganese in welding fumes established by the American Conference of Governmental Industrial Hygienists ("ACGIH"), did intentionally, knowingly, and recklessly seek to conceal the health hazards of manganese in welding fumes by

23

providing false and misleading information that exposure to manganese in welding fumes did not cause neurological injury.

## FIRST CLAIM - - CONSPIRACY AND FRAUDULENT CONCEALMENT

63. The Plaintiffs reallege and incorporate the foregoing allegations.

64. At all relevant times, the Defendants, with knowledge of the health hazards of manganese in welding fumes acted in concert and conspired in pursuance of a common plan or design to commit the following tortious acts:

    a.    fraudulently conceal, misrepresent, and suppress material scientific and medical information about the toxic effects of manganese in welding fumes;

    b.    deliberately fail to warn persons in proximity of welding fumes of the known health hazards of manganese in welding fumes;

    c.    deliberately breach their duty to instruct about proper ventilation, safety equipment, or other precautionary measures which would protect against the health hazards of manganese in the welding process;

    d.    deliberately breach their duty to investigate the health hazards of manganese welding;

    e.    sell welding products in a defective condition without necessary warnings of the catastrophic health hazards or instructions concerning precautionary measures.

65. The Defendants knowingly agreed to participate in the conspiracy by one or more of the following means:

    a.    actively taking part;

    b.    furthering it by cooperation; or

    c.    ratifying and adopting acts of other conspirators done for their benefit.

66. The Defendants participated in furthering the unlawful purposes of the conspiracy by delegating responsibilities to and carrying these out through the trade association committees.

24

67. In furtherance of the conspiracy, the Defendants then committed overt and tortious acts.

68. Upon information and belief, the Defendants committed numerous other overt and tortious acts, that are unknown to Plaintiffs at this time, in furtherance of the conspiracy through letters, memoranda, publications, meetings, telephone conversations, and other forms of communication directly between the Defendants and through the trade organization committees.

69. As a direct and proximate result of the Defendants' acts of conspiracy, the Plaintiffs were exposed to toxic welding fumes resulting in neurological injuries, and Plaintiffs' spouses suffered damages for loss of consortium.

## SECOND CLAIM - - NEGLIGENCE

70. The Plaintiffs reallege and incorporate the foregoing allegations.

71. At all relevant times, it was reasonably foreseeable by the Defendants that welders and persons in proximity to welding fumes, including the Plaintiffs would be exposed to welding fumes containing manganese by using welding products or working in proximity of other workers using welding products.

72. The Defendants assumed a duty to exercise reasonable care for the safety of the Plaintiffs.

73. Because exposure to welding fumes presents a risk of physical harm, all Defendants had a legal duty to exercise reasonable care for the safety of the Plaintiffs when making representations about welding safety and health in warning labels, publications, and instructions for ventilation and other precautionary measures.

74. The Defendants knew, or in the exercise of ordinary care should have known, that persons exposed to welding fumes would act in reliance upon representations made by the

25

Defendants about the health hazards associated with welding fumes and the precautionary measures required to protect against those health hazards.

75.     The Defendants knew, or in the exercise of ordinary care should have known, that welding fumes would cause neurological damage to workers like the Plaintiffs.

76.     The Defendants breached their duty of reasonable care and were negligent, without regard to whether the acts were intentional, knowing, or reckless.

77.     Beginning in 1970, the Defendants violated OSHA standards about publication of information about health hazards through MSDS guidelines that omitted necessary instructions about target organs, ventilation, precautionary measures, and other information needed to protect against the toxic effects of manganese in welding fumes.

78.     The Defendants violated industry standards about health and safety as set forth in the Z49 documents adopted by the AWS sponsored Z49.1 committee beginning in 1950 by failing to publish adequate warning of precautionary instructions and other information to welders or persons in the proximity to welding fumes about the standard.

79.     As a direct and proximate result of the Defendants' negligent acts and omissions, Plaintiffs suffered, and continues to suffer, severe neurological injuries, and Plaintiffs, Lugene Jones, Marja Johnson and Martha Eason, suffered damages for loss of consortium.

### THIRD CLAIM - - NEGLIGENCE-SALE OF PRODUCT

80.     The Plaintiffs reallege and incorporate the foregoing allegations.

81.     Defendants during some or all relevant times, manufactured sold, or distributed welding products that were supplied to the Plaintiffs' work sites.

82.     The Plaintiffs were exposed to welding fumes containing manganese from products sold by the Defendants, while using the products or working in the proximity of others using the products.

83. The Defendants had the duty, as product sellers, to exercise reasonable care for the safety of the Plaintiffs.

84. These duties included the responsibility for the following safety and health matters relating to welding fumes:

    a. the investigation of the health hazards;

    b. writing and publishing adequate and timely precautionary product labels and other health and safety information; and

    c. writing and publishing adequate and timely specifications and standards about ventilation, safety equipment, and other precautionary measures.

85. The Defendants knew, or in the exercise of reasonable care should have known, that welding fumes would cause neurological damage to welders like the Plaintiffs.

86. The Defendants breached their duty of reasonable care to the Plaintiffs and were negligent, without regard to whether the acts were intentional, knowing, or reckless.

87. Beginning in 1970, the Defendants violated OSHA standards about publication of information about health hazards through MSDS guidelines that omitted necessary instructions about target organs, ventilation, precautionary measures, and other information needed to protect against the toxic effects of manganese in welding fumes.

88. The Defendants violated industry standards about health and safety as set forth in the Z49 documents adopted by the AWS sponsored Z49.1 committee beginning in 1950 by failing to publish adequate and timely warning of precautionary instructions and other information to welders or persons in the proximity to welding fume about the standard.

89. As a direct and proximate result of the Defendants' negligent acts and omissions, the Plaintiffs suffered, and continue to suffer, severe neurological injuries, and Plaintiffs' spouses suffered damages for loss of consortium.

## FOURTH CLAIM - - STRICT LIABILITY
## -SALE OF UNREASONABLY DANGEROUS PRODUCT

90. The Plaintiffs reallege and incorporate the foregoing allegations.

91.     The Defendants identified above in paragraph 84 manufacture, sell, or distribute welding products that produce, or cause the production of, manganese-containing welding fumes, that the products were expected to and did reach various locations in Mississippi without substantial change in the condition in which it was sold.

92.     The Plaintiffs were exposed to welding fumes containing manganese from products sold by the seller Defendants, while using the products or working in the proximity of others using the products.

93.     The Defendants' products are unreasonably dangerous because, when used for their reasonably foreseeable and intended purposes in the welding process, they produce harmful fumes that cause neurological injuries.

94.     The Defendants' products are defective because:

    a.      adequate and timely warnings were not provided to users that the products product harmful fumes;

    b.      adequate and timely instructions were not provided to users about ventilation, safety equipment, or other precautionary measures; and

    c.      the Defendants failed to test or investigate the health hazards associated with the products.

95.     The defects in the Defendants' products existed when the products left the Defendants' control.

96.     The defects in the Defendants' products were the proximate cause of the Plaintiffs' injuries and damages.

97.     At all relevant times, the Plaintiffs had no knowledge of the defects in the Defendants' products.

## FIFTH CLAIM - - PUNITIVE DAMAGES

98.     The Plaintiffs reallege and incorporate the foregoing allegations.

99.     All Defendants were grossly negligent and acted in reckless disregard of the safety of the Plaintiffs, justifying the imposition of punitive damages.

## DAMAGES

28